IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

TERESA A. WHITE,           )     CASE NO. 3:18CV544
                            )
           Plaintiff,     )
                            )     JUDGE JEFFREY J. HELMICK
        v.             )
                            )     MAGISTRATE JUDGE
                            )     KATHLEEN B. BURKE
COMMISSIONER OF SOCIAL     )
SECURITY ADMINISTRATION,     )
                            )     **REPORT AND RECOMMENDATION**
           Defendant.     )

Plaintiff Teresa White ("White") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

## I. Procedural History

On August 13, 2014, White protectively filed applications for DIB and SSI, alleging a disability onset date of June 1, 2010.  Tr. 146, 470.  She alleged disability based on the following: rheumatoid arthritis, sleep apnea, lower back pain, fibromyalgia, cervical cancer and abnormal paps, basal cell carcinoma, herpes, hpv, gerd, diabetes, hernia, degenerative disc disease, osteoarthritis, lung disease, COPD, depression, panic attacks, and anxiety.  Tr. 482.  After denials by the state agency initially (Tr. 302, 303) and on reconsideration (Tr. 338, 339), White requested an administrative hearing.  Tr. 356.  A hearing was held before an

1

Administrative Law Judge ("ALJ") on May 5, 2017, Tr. 173-210, wherein White amended her alleged onset date to September 22, 2013, the date that the ALJ's denial of her prior application for disability became final.  Tr. 146.  In her August 1, 2017, decision (Tr. 146-165), the ALJ determined that there are jobs that exist in the national economy that White can perform, i.e., she is not disabled.  Tr. 164.  The Appeals Council denied White's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-4.

## II. Evidence

### A.  Personal and Vocational Evidence

White was born in 1962 and was 51 years old on her protective filing date.  Tr. 429.  She previously performed work as a packer.  Tr. 185.

### B.  Relevant Medical Evidence[1]

In 2010, an MRI of White's lumbar spine showed post-surgical changes at L5-S1 with residual left paracentral disc herniation and extensive scar tissue around the left L5 nerve root. Tr. 575.

In January 2013, White saw Hiton G. Shah, M.D., for her COPD.  Tr. 714.  She reported smoking a pack of cigarettes a day.  Tr. 714.  Upon exam, she had decreased air entry bilaterally and otherwise normal findings.  Tr. 714.  She was assessed with obstructive sleep apnea with excessive daytime sleepiness.  Tr. 714.

In May 2013, White had a sleep study that showed some abnormalities; Dr. Shah prescribed 2L of oxygen at night.  Tr. 738-739.  In June she had a Pulmonary Function Test that showed normal findings other than a mild decrease in pulmonary diffusing capacity, Tr. 770, and Dr. Shah diagnosed her with mild COPD.  Tr. 745.

---

[1] White only challenges the ALJ's findings regarding her physical impairments as they relate to her use of a cane. Accordingly, only the medical evidence relating to these impairments is summarized and discussed herein.

On October 7, 2013, White saw Dr. Shah and, upon exam, had decreased air entry bilaterally.  Tr. 752.  Dr.Shah diagnosed COPD, smoker.  Tr. 753.

On October 10, 2013, White saw her physician Hafusat Oni, D.O., at Center Street Community Health Center for a follow up for her diabetes, which she had recently been diagnosed with.  Tr. 925-926.  She had not yet started her medication, metformin, wanting to discuss it further, and Dr. Oni advised she start her metformin once a day for one week then twice a day thereafter.  Tr. 925, 927.

On December 10, 2013, White saw Dr. Oni for a follow up for her diabetes.  Tr. 933. She was confused about how she should be taking her metformin and was still only taking it once a day.  Tr. 933.  She reported drinking two liters of Mountain Dew a day, having switched over from Diet Mountain Dew.  Tr. 933.  She advised that her calves were bothering her, she could not stand or walk for long periods of time, and her feet had swollen since starting the metformin.  Tr. 933.  She had gained 20 pounds since her last visit.  Tr. 933.  On exam, she had 3+ pitting edema of her lower extremities.  Tr. 935.  Dr. Oni assessed edema, type 2 diabetes, and abnormal weight gain.  Tr. 935.  He advised, "STOP THE HARD CANDY.  STOP THE REGULAR MOUNTAIN DEW."  Tr. 936.  He told her to take her metformin twice a day, ordered lab work, and prescribed Lasix for her edema.  Tr. 936.  White returned to Dr. Oni on December 23; she had stopped her intake of sweets and soda and was feeling better.  Tr. 939. Upon exam, she had no edema.  Tr. 941.  Dr. Oni assessed morbid obesity and edema.  Tr. 942.

On January 3, 2014, White saw Madhu Mehta, M.D., for her four-month follow up for rheumatoid arthritis, osteoarthritis, fibromyalgia, degenerative disc disease, chronic low back pain, and morbid obesity.  Tr. 826.  White reported diffuse back and leg pain.  Tr. 826.  Upon exam, she had 1+ edema around her ankles and legs, knee crepitus, and multiple fibromyalgia

syndrome tender points. Tr. 830. She also had normal range of motion in all joints, no synovitis in any joints, no obvious joint deformities, normal muscle strength in all groups, normal range of motion in her back, moderate paravertebral muscle tenderness, normal strength and tone, normal symmetric reflexes, normal coordination and a normal gait. Tr. 830.

In March and April, 2014, White saw her pain management doctor, Tim Chowdhury, M.D., for an L4-5/L5-S1 transforaminal epidural steroid injection. Tr. 865, 868.

On April 25, 2014, White followed up with Dr. Mehta. Tr. 832. She reported worsening joint pain, especially in her knees and ankles and somewhat in her hands. Tr. 832. She had started walking for exercise. Tr. 832. Upon exam, she had a normal range of motion in all joints and back, pain with range of motion in her left ankle, significant crepitus in both knees, mild synovitis in several PIP and MCP joints of her hands bilaterally, no obvious joint deformities, normal muscle strength, multiple tender fibromyalgia points, moderate paravertebral muscle tenderness, and normal reflexes, sensation, coordination, and gait. Tr. 834. Dr. Mehta assessed rheumatoid arthritis, worse subjectively with some objective evidence and continued her medications. Tr. 834.

On May 12, White had an MRI of her lumbar spine that showed disc prolapse at L5-S1 associated with surrounding scar tissue, also associated with moderate bilateral foraminal narrowing, and a milder disc bulge at L4-L5 without significant canal or foraminal compromise. Tr. 778.

On July 3, White saw Dr. Shah and had a 6-minute walk test that indicated deconditioning and no need for supplemental oxygen. Tr. 792.

On July 9, White saw Robert Crowell, M.D., for a follow up evaluation for her lumbar pain. Tr. 812. She reported ongoing low back pain with bilateral lower extremity radicular

symptoms, left worse than right.  Tr. 812.  It was worse with activities and sitting, standing, and walking were all equally affected.  Tr. 812.  Dr. Crowell stated that her recent MRI was comparable to her 2010 MRI results, and that the foraminal changes and degenerative disc bulging have remained unchanged the past four years.  Tr. 812.  She reported being unable to lift anything at all and she only walked with crutches or a cane.  Tr. 812.  She also complained of numbness and weakness in her leg and foot and medication provided little help.  Tr. 812.  Upon exam, she had diffuse decrease in her lumbar range of motion with low back pain, normal gait and balance, and intact and symmetric lower extremity manual motor testing.  Tr. 814.  Her hip range of motion was minimally painful with guarding and she had diminished subjective sensation to light touch over both lower extremities.  Tr. 814.  Reflexes were intact in her knees and her left ankle jerk was decreased, "essentially unchanged over time."  Tr. 814.  Dr. Crowell's impression was painful lumbar disc degeneration without focally severe neural compression.  Tr. 814.  He wrote: "in this setting, she might benefit from a lumbar fusion," but then explained that such a surgery would likely fail and advised she continue her current pain management practices, emphasizing the importance of trunk strength and fitness.  Tr. 814.

An August 15, White followed up with Dr. Oni for her diabetes.  Tr. 963.  Upon exam, her lungs were clear, she had no cyanosis, clubbing, or edema in her extremities, and intact sensation.  Tr. 965.

On September 2, 2014, White saw Dr. Chowdhury and reported low back and right hip pain and said that she was having problems walking and had fallen several times.  Tr. 873.  On exam, Dr. Chowdhury checked a box indicating that she had an antalgic gait and did not check the box indicating she used an assistant device.  Tr. 873.  She had a decreased range of motion in her lumbar spine and a negative straight leg raise test.  Tr. 873.  Dr. Chowdhury's impression

was L5-S1 herniation, lumbar post-laminectomy syndrome, lumbar radiculopathy, diabetic neuropathy, and hip pain. Tr. 873. On September 9, White returned to Dr. Chowdhury complaining of neck pain that radiated down to her right hand. Tr. 871. Dr. Chowdhury indicated that White used a cane. Tr. 871. An x-ray of White's right hip taken on September 12 indicated minor arthritic changes suspected and an x-ray of her cervical spine indicated some mild degenerative changes at C6-C7. Tr. 771-772.

On September 22, 2014, White saw Dr. Shah for a COPD follow up; she complained of continued shortness of breath. Tr. 793. On exam, she had decreased air entry bilaterally. Tr. 793. Dr. Shah assessed calcified lung nodule, COPD, and multifactorial shortness of breath. Tr. 793.

On October 2, White saw Dr. Chowdhury and reported low back pain, right hip pain, neck pain, headaches, and bilateral foot and knee pain. Tr. 869. On exam, she had an antalgic gait, used a cane, and had tenderness in her SI joints. Tr. 869. Dr. Chowdhury's impression was L5-S1 herniation, lumbar post-laminectomy syndrome, lumbar radiculopathy, diabetic neuropathy, right hip pain, and sacroiliitis. Tr. 869. He continued her medications and advised she do home exercises. Tr. 869. On October 15 and 29, Dr. Chowdhury gave her a right SI joint injection. Tr. 1009, 1006.

On October 24, White saw Dr. Mehta for a follow up for her arthritis, low back pain, fibromyalgia, and morbid obesity. Tr. 1108. She reported her worst pain was in her ankles and knees and she struggled with walking; she was not exercising much. Tr. 1108. Upon exam, she had clear lungs, normal range of motion in all joints, bilateral knee crepitus with increased warmth and joint line tenderness, no active clinical synovitis in any other joints, no obvious joint deformities, normal muscle strength in all muscle groups, normal ranges of motion, multiple

tender points, and normal coordination and gait.  Tr. 1109-1110.  Dr. Mehta assessed rheumatoid

arthritis, fibromyalgia syndrome, morbid obesity, and bilateral knee osteoarthritis, and injected

her knees with Depo-Medrol.  Tr. 1110.

On November 4, 2014, White saw Dr. Chowdhury and reported low back pain, right hip

pain, burning in her bilateral toes, and a pinching feeling on the inside of the right thigh.  Tr.

1001.  Upon exam, she used a cane.  Tr. 1001.  She returned on November 25, complaining of

low back pain, bilateral leg pain, right hip pain when walking up steps and lying down, and neck

pain.  Tr. 999.  Upon exam, she had an antalgic gate and used a cane.  Tr. 999.  Dr. Chowdhury

continued her medications and advised she do home exercises.  Tr. 999.

On December 30, White saw Dr. Chowdhury complaining of low back pain, right hip

pain, bilateral leg pain, and occasional neck pain.  Tr. 997.  Upon exam, she used a cane.  Tr.

997.

On January 23, 2015, White followed up with Dr. Mehta for arthritis, low back pain,

fibromyalgia, and obesity.  Tr. 1103.  She reported body stiffness and being sore all over but

with no new swollen or tender joints.  Tr. 1103.  Her combined medications were helping as had

her knee injections.  Tr. 1103.  She had not been exercising much, stating that it hurt to do so.

Tr. 1103.  Upon exam, she had gained weight (14 pounds) since her last visit.  Tr. 1103.  She had

normal ranges of motion in all joints, bilateral knee crepitus without joint line tenderness, no

synovitis or joint deformities, osteoarthritic changes in her hands, normal muscle strength in all

muscle groups, multiple tender points, moderate paravertebral muscle tenderness, normal

strength and tone, normal symmetrical reflexes, and normal coordination and gait.  Tr. 1105.  Dr.

Mehta assessed her with rheumatoid arthritis, fairly well-controlled; continued her medications;

advised stretching for her fibromyalgia; and encouraged weight loss.  Tr. 1105.

On January 27, 2015, White saw Dr. Chowdhury and reported low back pain, right hip pain, and bilateral leg pain.  Tr. 995.  Upon exam, she had an antalgic gait and used a cane.  Tr. 995.  She returned on February 26, reporting pain in her legs, low back, and "all over."  Tr. 993.  She reported an "excellent" response to the SI injections she had in October.  Tr. 993.  Upon exam, she had an antalgic gait.  Tr. 993.

On March 3, 2015, White had an EMG study due to her lumbar pain radiating to her legs; the results were normal and showed no evidence of any radiculopathy, plexopathy, or polyneuropathy.  Tr. 1003-1004.

On March 5, White saw Nagah E. Elarossi, M.D., at Center Street Community Health Center for swelling in her left foot.  Tr. 1075.  Upon exam, she had mild bilateral leg edema, clear lungs, and no crackles.  Tr. 1079.  Dr. Elarossi assessed edema and shortness of breath; he advised her to go to the emergency room due to cardiac concerns, but White refused, so Dr. Elarossi advised her to adopt a strict no salt diet and follow up with a cardiologist.  Tr. 1079.  White saw a cardiologist, Dr. Gaddam, who observed her to have clear lungs, trace pedal edema, full range of motion, no tenderness, normal strength, and to use a cane, and increased her Lasix dosage.  Tr. 1097, 1100.

On March 19, White saw Dr. Chowdhury and reported all over body pain.  Tr. 1422.  On exam she had an antalgic gait.  Tr. 1422.  An x-ray of her lumbar spine taken March 23 showed degenerative changes at the lumbosacral junction which were, overall, unchanged from 2010.  Tr. 1227.

On March 30 and April 13, Dr. Chowdhury gave White lumbar medial branch blocks.  Tr. 1421, 1420.

On April 1, 2015, White saw Dr. Gaddam for a follow up.  Tr. 1093.  Dr. Gaddam noted that she had gained more weight since her last visit and was 30 pounds heavier than she had been one year ago, primarily due to overeating and lack of exercise.  Tr. 1090.  Upon exam, she had clear lungs, no edema, normal strength, and walked with a cane.  Tr. 1093.  Dr. Gaddam assessed shortness of breath and overeating with lack of exercise.  Tr. 1093.

On April 16 and May 14, White saw Dr. Chowdhury and, upon exam, had an antalgic gait and used a cane.  Tr. 1418, 1416.

On June 3 and 17, Dr. Chowdhury performed lumbar radiofrequency ablation.  Tr. 1414, 1415.

On June 30, White saw Dr. Chowdhury and, upon exam, had an antalgic gait and used a cane.  Tr. 1412.  She rated her average pain score between a 2 and a 3.  Tr. 1412.  She was to continue with home exercises.  Tr. 1412.

On July 1, 2015, White saw Suzanne Schuler, M.D., at Center Street Community Health Center for a follow up visit.  Tr. 1513.  Her blood sugars were controlled.  Tr. 1513.  Upon exam, she was alert and in no acute distress, had clear lungs, and her extremities showed no cyanosis, clubbing, or edema; sensation to monofilament was diminished bilaterally.  Tr. 1517.

On July 23, White had an x-ray of her knees, which showed chronic findings of patellar tendinopathy on the right without acute bony abnormality, and mild medial compartment osteoarthritic disease on the left without acute bony abnormality.  Tr. 1214.

On July 28, White saw Dr. Chowdhury reporting low back pain across her left side that was tender.  Tr. 1410.  She reported an excellent response to her recent lumbar radiofrequency ablation.  Tr. 1410.  Upon exam, she had an antalgic gait.  Tr. 1410.

On August 12 and 16, Dr. Chowdhury performed left sided sacroiliac joint injections.  Tr. 1409, 1408.

On September 10, 2015, White saw Dr. Mehta and reported no major changes in her symptoms, stated that she had good days and bad days, and that overall her control was good. Tr. 1509.  She had not been exercising and was still smoking.  Tr. 1509.  Upon exam, her lungs were clear, she had a normal range of motion in all joints, minor knee crepitus, no joint deformity, normal muscle strength, and slight paravertebral muscle tenderness.  Tr. 1511.  Dr. Mehta observed that White's rheumatoid arthritis was fairly well-controlled and her back pain was improved but not fully controlled.  Tr. 1511.  She continued her medication and advised stretching exercises.  Tr. 1511.

On September 29, White saw Dr. Chowdhury and stated that she was not in pain that day. Tr. 1405.  She had an excellent response to her SI injections.  Tr. 1405.  Her gait was normal but she used a cane.  Tr. 1405.  That day she also saw Dr. Schuler complaining of nausea and abdominal pain.  Tr. 1504.  Upon exam, she had no edema, normal pulses, and diminished sensation to monofilament.  Tr. 1508.

On October 27, White saw Dr. Chowdhury for low back pain and stated that she was stiff all over.  Tr. 1403.  Upon exam, she had an antalgic gait and used a cane.  Tr. 1403.  She returned on November 19, complaining that she was still stiff all over.  Tr. 1401.  Dr. Chowdhury did not assess her gait.  Tr. 1401.  On December 15, White saw Dr. Chowdhury complaining of pain in her lower back, hips and legs.  Tr. 1399.  Her average pain was between 3 and 4 out of 10.  Tr. 1399.  Upon exam, she had an antalgic gait and used a cane.  Tr. 1399.  She was to continue her medications and her home exercises.  Tr. 1399.

On December 29, White saw Dr. Schuler complaining of diarrhea and left hand swelling. Tr. 1493.  Upon exam, she had no synovitis or edema in her hands and a positive Tinel's testing on the left.  Tr. 1493.  Dr. Schuler assessed rheumatoid arthritis, type 2 diabetes, and carpal tunnel syndrome.  Tr. 1496.

On January 6 and February 24, 2016, White underwent right sided caudal epidural steroid injections at L5-S1.  Tr. 1395, 1398.

On January 12, White saw Dr. Chowdhury; she had an antalgic gait and used a cane.  Tr. 1396.

On January 22, White underwent a 6-minute walk test that showed desaturation, she needed supplemental oxygen, and likely had severe lung disease.  Tr. 1211.

On February 25 and March 24, White saw Dr. Chowdhury and had an antalgic gait and used a cane.  Tr. 1393, 1391.  On March 30 and April 25, Dr. Chowdhury performed joint injections in her right knee and left knee, respectively.  Tr. 1390, 1389.

On April 4, White saw Dr. Schuler for weight loss.  Tr. 1461.  She told Dr. Schuler that she was to be on oxygen 24 hours a day.  Tr. 1461.

On April 26 and May 15, White saw Dr. Chowdhury and had an antalgic gait and used a cane.  Tr. 1387, 1386.

On June 2, White saw Dr. Shah.  Tr. 1456.  Upon exam, her lungs were clear and Dr. Shah continued her medications and wrote, "Continue oxygen 16 hours.  In view of the severe lung disease, prognosis is guarded."  Tr. 1459-1460.

On June 20 and July 11, Dr. Chowdhury performed lumbar medial branch blocks.  Tr. 1384, 1381.

On June 23 and July 26, White saw Dr. Chowdhury and had an antalgic gait and used a cane. Tr. 1382, 1379. At her July visit she reported urinary incontinence. Tr. 1379. She underwent lumbar radiofrequency ablation on August 1 and 15. Tr. 1378. On August 25, she saw Dr. Chowdhury and reported soreness all down her back. Tr. 1375. She had an antalgic gait and used a cane. Tr. 1375.

An October 10 x-ray of her chest indicated chronic interstitial lung markings and was otherwise unchanged from 2015 findings. Tr. 1196.

On October 20, White saw Dr. Chowdhury and reported pain in her back and legs, being achy all over, and at the end of her rope because her pain pills weren't lasting long enough. Tr. 1372. Her average pain score was a 4 and she received 50% relief from her recent lumbar ablations. Tr. 1372. She had an antalgic gait and used a cane. Tr. 1372.

On November 22 White returned to Dr. Chowdhury and reported pain all over—in her back, toes, ankles, knees, neck, hips, and shoulders. Tr. 1370. Her average pain score was a 6-7. Tr. 1370. On November 30 and December 14, White underwent bilateral sacroiliac joint injections. Tr. 1369, 1368. On December 22, White saw Dr. Chowdhury and reported pain in her low back, legs, right hip, and right ankle. Tr. 1366. She had an antalgic gait and used a cane. Tr. 1366. Her pain had decreased by 50% after her last injections and her average pain score was 3. Tr. 1366.

On January 17, 2017, White saw Dr. Chowdhury and reported an average pain score of 2. Tr. 1364. She had an antalgic gait and used a cane. Tr. 1364.

A lung x-ray taken on January 30 showed a mild bronchiolitis pattern with slight thickening of the mid and lower lung small airways; viral, versus reactive airway disease, was suspected. Tr. 1252.

On January 30, White saw Dr. Schuler for a check-up and reported "she still has the aching all over."  Tr. 1436.  She was smoking a pack and a half of cigarettes a day.  Tr. 1436.  A physical examination was normal and Dr. Schuler recommended she stop smoking.  Tr. 1439. White returned on February 27 due to having a cough, sneezing, congestion, sore gums, and difficulty breathing for a few days.  Tr. 1431.  Upon exam, she had diminished breath sounds. Tr. 1434.  Dr. Schuler assessed bronchitis and prescribed medications.  Tr. 1434-1435.

### C. Opinion Evidence

#### 1. Treating source

On November 10, 2014, Dr. Shah completed a Medical Source Statement—Pulmonary form on behalf of White.  Tr. 978.  Dr. Shah wrote that White did not need to use a cane or other assistive device while engaging in occasional standing/walking; she could stand/walk for zero to two hours and sit for zero to two hours in an eight-hour workday; could occasionally lift up to 20 pounds and frequently lift less than 10 pounds; had no significant reaching, handling or fingering limitations; needed a job that permitted shifting positions at will; could never twist, stoop, crouch, squat, or climb ladders or stairs; and was incapable of performing even low stress jobs; and she would miss about 4 days of work per month.  Tr. 979-980.

On October 15, 2015, Dr. Schuler completed a Medical Source Statement—Physical form on behalf of White.  Tr. 1114-1116.  Dr. Schuler stated that she had seen White twice and diagnoses were type 2 diabetes, COPD, rheumatoid arthritis, depression, lumbar degenerative disc disease, fibromyalgia, and morbid obesity.  Tr. 1114.  Her symptoms were pain all over her body and shortness of breath.  Tr. 1114.  Dr. Schuler indicated her clinical findings and objective signs: decreased joint range of motion, crepitus of the knees, and tenderness of her lumbar spine. Tr. 1114.  She needed to use a cane or other assistive device while engaging in occasional

13

standing/walking, could stand/walk or sit for zero to two hours in an eight-hour workday, could lift and carry less than 10 pounds, could never twist or climb ladders or stairs and rarely stoop or crouch/squat, and could use her hands/fingers/arms for manipulative activities and reaching for only 10 minutes per day. Tr. 1114-1115. When asked if White needed a sit/stand option, Dr. Schuler wrote that White "feels unable to work in any capacity." Tr. 1115. She was incapable of performing even low stress jobs and would miss more than four days of work per month. Tr. 1115-1116.

### 2. Consultative Examiner

On November 11, 2014, White saw Don McIntire, Ph.D., for a psychological consultative examination. Tr. 982-990. White reported taking oxygen at night and using a cane for support. Tr. 985. Upon exam, she was mildly obese, walked slowly, and heavily relied on her cane for support. Tr. 986. Her fine motor control was good as she held her pen in a firm pincer grasp. Tr. 986.

### 3. State Agency Reviewers

On December 15, 2014, state agency reviewing physical Elizabeth Das, M.D., reviewed White's record and opined that she could perform light work with postural limitations. Tr. 277. On May 25, 2015, Leslie Green, M.D., reviewed White's record and adopted Dr. Das' opinion, adding environmental restrictions. Tr. 316-317.

### D. Testimonial Evidence

#### 1. White's Testimony

White was represented by counsel and testified at the administrative hearing. Tr. 175. The ALJ began the hearing by explaining that she was not bound by a prior ALJ's decision on a prior application filed by White, which found that White could perform work at the light

exertional level.  Tr. 179.  Counsel gave an initial statement, in which he stated that, since the prior ALJ's decision, White's back and leg pain and cervical spine issues had gotten worse.  Tr. 182.  She continued receiving treatment for her COPD, got treatment for spondylosis, and had "a continued need and use of oxygen treatment 24 hours a day."  Tr. 181-182.  The ALJ directed counsel to find in the record the note that indicated White was to be on oxygen 24 hours a day.  Tr. 182.

White testified that she was divorced and lived with a friend in a mobile home that White owned.  Tr. 183.  She has never had a driver's license because she is afraid to drive.  Tr. 183-184.  She generally gets around by having her roommate or family member drive her.  Tr. 184.  When asked to explain why she cannot work, White answered, "My back, everything that's wrong with me."  Tr. 186.  She had had back surgery and needed a second surgery, but her doctor said that her success rate would be low and to continue her pain management.  Tr. 186.  She also has COPD, rheumatoid arthritis, and diabetes.  Tr. 186.  Her diabetes causes her feet to swell and she has neuropathy.  Tr. 186.  She is on oxygen.  Tr. 187.  Her attorney told the ALJ that he found the treatment note wherein Dr. Shah prescribed oxygen at night, in February 2014.  Tr. 187.  The ALJ observed that being on oxygen at night is not the same as being on it 24 hours a day.  Tr. 187.  White stated that she is on it "24/7."  Tr. 187.  The ALJ informed White that there was no record of her being on oxygen 24 hours a day.  Tr. 187.

Regularly, White saw Doctors Mehta for her rheumatoid arthritis, Chowdhury for pain management (medications and injections), and Schuler, her primary care physician, who tests her blood and prescribes her diabetes medication.  Tr. 187-188.  Her medications are effective and she has side effects from them, such as her rheumatoid arthritis medication causes her liver enzymes to shoot up, the injections cause her blood sugar to go off the charts, and she has

nausea, stomach aches, diarrhea, headaches, and some chest pain.  Tr. 189.  She was hospitalized about a year prior when her blood sugar shot off the charts.  Tr. 189.  She also regularly receives counseling and mental health medication.  Tr. 189.

White testified that she smokes about a pack of cigarettes a day.  Tr. 191-192.  When asked if it is dangerous to smoke while on oxygen, White agreed and stated that she takes her oxygen off and goes outside to smoke.  Tr. 192.  Her breathing problems occur when she exerts herself.  Tr. 193.  She estimated she could walk about a block and explained that she walked from the garage to the hearing office and her friend pushed her in her walker.  Tr. 193.  She thought she could lift maybe 10 pounds.  Tr. 193.  She could not pick up an item that fell under the couch; she cannot bend down.  Tr. 193.

On a typical day, White gets up and sits on the couch in the front room.  Tr. 193.  She stays there until she goes to bed, unless she has a doctor's appointment.  Tr. 193.  That's the only thing she does, go to doctor appointments.  Tr. 193.  Her doctors tell her to exercise but it is hard for her because of her back and everything and her oxygen and inability to breathe.  Tr. 194.  She tries to do some stretches in bed.  Tr. 194.  She does not do any household chores and she does not go grocery shopping; her roommate does these things.  Tr. 194.  When she is sitting in her chair all day she looks at the newspaper or glances at the television, which she keeps on for the noise.  Tr. 194.  Her dog and cat are there with her.  Tr. 194.  She could not perform a job that required her to be seated because she can't get up and she can't sit that long; she has to get up and walk around because her back hurts.  Tr. 194.  She walks throughout the trailer.  Tr. 195.

The ALJ asked whether the walker that White used at the hearing had been prescribed to her and White stated that it had not, but that the one she has at home was.  Tr. 202.  The ALJ inquired where in the record was the prescription for the walker, because she did not see such a

record; White indicated that she got it from Dr. Chowdhury and stated that she has used it for a few years due to her legs giving out and her back.  Tr. 202.  White's attorney then corrected the record by informing the ALJ that Dr. Shah prescribed oxygen for 16 hours, not 24, in June 2016. Tr. 202.

### 2.  Vocational Expert's Testimony

A Vocational Expert ("VE") also testified at the hearing.  Tr. 197-208.  The ALJ discussed with the VE White's past work as a packer, which she performed at the medium exertional level.  Tr. 185.  The ALJ asked the VE to determine whether a hypothetical individual of White's age, education and work experience could perform her past work or any other work if that person had the limitations assessed in the ALJ's RFC determination, and the VE answered that such an individual could not perform her past work but could perform other jobs in the national economy such as merchandise marker, office helper and photocopy machine operator. Tr. 197-208.

### III. Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[2] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy.  *Id.*

### IV. The ALJ's Decision

In her August 1, 2017, decision, the ALJ made the following findings:

---

[2] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

1.      The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.  Tr. 149.

2.      The claimant has not engaged in substantial gainful activity since September 22, 2013, the amended alleged onset date.  Tr. 149.

3.      The claimant has the following severe impairments: degenerative disc disease with spondylosis and radiculopathy, fibromyalgia, rheumatoid arthritis, COPD, osteoarthritis, depression, panic disorder, sleep apnea, diabetes with diabetic neuropathy, and obesity.  Tr. 149.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 150.

5.      The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb ramps and stairs but never climb ladders, ropes and scaffolds; occasionally stoop, and frequently kneel, crouch and crawl.  As for understanding and remembering, she can carry out simple and some complex instructions; sustain attention and concentration to complete tasks where production quotas are not critical; she can tolerate the public, coworkers and supervisors with limited interpersonal demands in an object-focused work setting.  She can adapt to routine changes in a static work setting.  She is to have no concentrated exposure to fumes, odors, dust and gases and poor ventilation.  She is to have a sit and stand option at the workstation to change position each hour for two minutes while remaining on task 90% of the time.  She is limited to no moving mechanical parts, and she is limited to no exposure to open flame or sharp objects.  Tr. 153.

6.      The claimant is unable to perform any past relevant work.  Tr. 163.

7.      The claimant was born in 1962 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age.  Tr. 164.

8.      The claimant has at least a high school education and is able to communicate in English.  Tr. 164.

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.  Tr. 164.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  Tr. 164.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from September 22, 2013, through the date of this decision. Tr. 165.

### V. Plaintiff's Arguments

White argues that the ALJ failed to properly consider her use of a cane when assessing her RFC.  Doc. 15, p. 2.

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989) (per curiam) (citations omitted)).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

White argues that the ALJ failed to provide a "substantive, in-depth discussion of Ms. White's need for a cane."  Doc. 15, p. 22.  She complains that the ALJ's reasoning is limited to one sentence wherein the ALJ states that White presented with a cane in some pain management visits but had a normal gait in numerous visits and did not need a walker to ambulate.  Doc. 15, p. 23.

The ALJ thoroughly discussed the evidence of record and made the following statements regarding White's use of a cane or other assistive device:

> Describing testimony: "She said she was prescribed a walker for several years, and had been on continuous oxygen for a year."  Tr. 154.

> Describing why she did not find White's allegations to be supported by the objective evidence: "For example, the record did not support the claimant's need to use a walker or oxygen 24 hours a day."  Tr. 154.

> Describing a November 2014 psychological consultative examination: "The claimant ambulated with a cane in this visit, but in recent visits at Smith Clinic [citing Tr. 1110, an October 2014 visit with Dr. Mehta], the claimant ambulated normally [].  The claimant had a normal gait in January 2015 [citing Tr. 1105, a visit with Dr. Mehta]."  Tr. 160.

> Describing a January 2017 visit with Dr. Schuler: "There was no evidence that the claimant was using a cane or oxygen during this visit."  Tr. 159.

> When explaining why the alleged severity and duration of White's symptoms and limitations are inconsistent with her treatment history, activities of daily living, and objective evidence, states: "The claimant did present with a cane in some pain management visits but had a normal gait in numerous visits and no evidence she required a walker to ambulate."  Tr. 160.

> Describing the November 2014 opinion of Dr. Shah, White's pulmonologist: "the claimant did not use a cane to ambulate .... Some favorable weight is given to the 20-pound exertional abilities, and that a cane was not medically necessary."  Tr. 162.

> Describing the October 2015 opinion of Dr. Schuler, White's primary care physician: "the claimant needed to use a cane, [etc.]"  And, describing why the ALJ gave Dr. Schuler's opinion "little" weight: physical exam findings did not support the extreme limitations, including imaging studies and physical exam findings; "[t]here was no evidence that the claimant was using a cane or oxygen during this visit"; and Dr. Schuler did not provide sufficient explanation or articulation for the basis of her opinion.  Tr. 163.

White does not contest these findings.

White's primary argument is that there is evidence in the record that supports her assertion that she needs a cane to ambulate.  She cites records wherein two of her providers, Drs. Chowdhury and Gaddam, and the consultative examiner, Dr. McIntire, observed that she used a cane during visits (22 times by Dr. Chowdhury); Dr. Chowdhury observed that she had an

antalgic gait 24 times; she presented to her initial appointment with the Social Security Field Office walking slowly, limping, and using a cane; she wrote in a disability report that she used a cane for walking and getting up from a seated position; she told Dr. Chowdhury that she had fallen several times; and Dr. Crowell observed her to have decreased sensation and reflexes in her lower extremities.  Doc. 15, pp. 21-22.  She asserts that, by finding that a cane was not necessary, the ALJ substituted her lay opinion in place of the opinion of her treating physician, Dr. Schuler.  Tr. 15, p. 23.

As an initial matter, Dr. Schuler, who had only seen White twice before she wrote her opinion stating that White needed to use a cane while standing and walking, had not observed White walking with an abnormal gait or using a cane.  The fact that Dr. Schuler had not observed White using a cane supports the ALJ's assessment that Dr. Schuler's opinion—that White needed a cane—was worthy of little weight.  And Dr. Shah, White's other treating physician, had opined that White did not need a cane while standing or walking, a finding that the ALJ relied on, and the state agency physicians' opinions did not find that a cane was medically necessary. *See, e.g., Murphy v. Astrue*, 2013 WL 829316, at *10 (M.D.Tenn. March 6, 2013) ("[T]he Sixth Circuit has held that if a cane is not a necessary device for the claimant's use, it cannot be considered a restriction or limitation on the plaintiff's ability to work. *Carreon v. Massanari*, 51 Fed.Appx. 571, 575 (6th Cir. 2002).").  In other words, the ALJ's finding that White did not need a cane to ambulate was not a layperson's opinion but was based on opinion evidence in the record.

Furthermore, the ALJ detailed the following longitudinal record evidence to support her finding that White did not need a cane: recent imaging tests showed that White's lumbar condition had not significantly worsened from four years prior and imaging of other areas

(knees, cervical spine, hips) showed mild findings; a lower extremity EMG was normal; she was regularly found by her rheumatologist, Dr. Mehta, to have normal strength, range of motion, balance and gait; her diabetes was not uncontrolled; her COPD was mild; joint injections resulted in excellent results; and her medications were beneficial.  Tr. 155-161.  The ALJ also explained that White was not compliant with treatment: she was a heavy smoker; after an emergency room visit for elevated blood sugar she stated that she ate and drank what she liked, including regular soda (which she had previously been warned to stop drinking); she declined a stress test; and she was not compliant with her mental health medications.  Tr. 155-159.  The ALJ remarked that White had testified at the hearing that she did very little, but elsewhere evidence in the record showed that she did some cleaning around the house, shopped independently, and attended family events, including her grandson's football practices.  Tr. 161.  White testified that she had been prescribed a walker and oxygen 24 hours a day, but records to support these assertions were not found in the record despite investigation, and White did not present to appointments with oxygen, or, at all times, with a cane.  Tr. 158, 159, 161.  All the above, detailed by the ALJ, is substantial evidence that supports the ALJ's decision.  The fact that White presented at times with a cane and with an antalgic gait does not change the fact that other times she did not.  It is for the ALJ, not the Court, to weigh the evidence and decide questions of credibility.  *See Garner*, 745 F.2d at 387.

Finally, White asserts that this case is similar to *Ray v. Comm'r of Soc. Sec*., 940 F.Supp.2d 718, 727-728 (S.D.Ohio 2013), in which a court reversed the decision of the Commissioner due to the ALJ's error when assessing the claimant's use of a cane.  Doc. 15, p. 20.  In *Ray*, the claimant requested a cane from his doctor due to pain and his knee giving out, a nurse performed a "Moving Safely Risk Assessment," the doctor examined the leg, and, based

on these findings, prescribed, and continued to prescribe, a cane.  *Id*. at 728.  The court noted that the ALJ "completely disregard[ed]" the doctor's cane prescription and the claimant's testimony that he used the cane full time and concluded, "By summarily disregarding Plaintiff's prescribed cane—and not basing such a decision on *any* medical opinion of record—the ALJ improperly subjected her lay opinion for that of a doctor who would be qualified to make such a medical determination."  *Id*. at 728 (emphasis in original).  Here, White has not identified a prescription for a cane in the record; rather, some of White's doctors merely noted she presented using a cane.  The ALJ relied on other medical opinions in the record and explained that he did not fully credit White's testimony.  Thus, this case is distinguishable from *Ray*.

In short, substantial evidence supports the ALJ's decision and it must, therefore, be affirmed.  *See Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 477 (6th Cir. 2003) (the Commissioner's decision is upheld so long as substantial evidence supports the ALJ's conclusion, even when substantial evidence may support the claimant's position).

## VII. Conclusion

For the reasons set forth herein, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

Dated: January 28, 2019

/s/ Kathleen B. Burke
_____
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).